SAMUEL I. MEYERS ET AL., DEFENDANTS IN ERROR, v. HUDSON COUNTY ELECTRIC COMPANY AND THE MAYOR AND COMMON COUNCIL OF BAYONNE, PLAINTIFFS IN ERROR.

Argued July 5, 1899—Decided November 20, 1899.

1. Public lighting only is provided for by the act of May 22d, 1894 (*Pamph. L.*, p. 477), and Bayonne may, under that act, without the consent of the abutting landowners or previous designation of streets, use the streets and erect poles or cause poles to be erected for public lighting.

2. The acts of 1884 (*Pamph. L.*, p. 331), 1893 (*Pamph. L.*, p. 412) and 1896 (*Pamph. L.*, p. 322) apply to private lighting companies which desire to use streets for private lighting, heat and power purposes, and require the consent of the abutting landowners and the designation of streets by the city before poles can be erected.

3. The purpose for which the designation of streets by the city is required is to prevent the use of any street without the consent of the city, and that object is attained by a general designation of all the streets. The permission of the city is a prerequisite to the right of the company to enter the streets, and the designation is for the purpose of establishing what streets the company may use, and not what they must occupy.

On error to the Supreme Court. For opinion of the Supreme Court, see 31 *Vroom* 350.

For the plaintiffs in error, *Thomas N. McCarter, Jr.*, and *Riker & Riker*.

For the defendants in error, *DeWitt Van Buskirk* and *Corbin & Corbin*.

The opinion of the court was delivered by

VAN SYCKEL, J.    The *certiorari* prosecuted in this case carried to the Supreme Court a resolution of the common council of the city of Bayonne, passed November 8th, 1896, authorizing the placing of poles along Thirty-third street and Avenue C, on land of the prosecutors, for the purpose of supplying electricity to three electric lights for the city; also an ordinance passed by the mayor and common council of said city on the 8th day of January, 1895, authorizing the Hudson County Electric Company to use the public roads and streets of the said city for the purpose of erecting poles to supply electricity for the public as well as private uses in the city, and also a contract dated January 6th, 1895, between the mayor and common council of the city and the Hudson County Electric Company, by which said company agreed to furnish light for each and all of the street lamps of the city then erected or thereafter to be erected by order of the said city, and to fit up new lamps in any avenue or street in which gas mains are or may be laid whenever required to do so by the city, the lamps and lamp-posts to be furnished and owned by the city, the contract to run for a term of five years.

First, the prosecutors insist that the poles on their premises cannot be lawfully erected under and by force of the resolution, because the city has never designated Thirty-third street and Avenue C as streets in which such poles might be placed, as required by the "Act relative to electric light, heat and power companies," approved April 21st, 1896.    *Pamph. L., p.* 322.

The acts of 1884 (*p.* 331), 1893 (*p.* 412) and 1896 (*p.* 322) make the consent of landowners necessary to authorize the erection of poles, and also provide that no pole shall be placed in any street of an incorporated city or town without first obtaining from such city or town a designation of the streets in which the same shall be placed and the manner of placing the same.

These three acts apply only to lighting, heat and power companies seeking to obtain the use of the public streets for

their private purposes, and do not in any way limit the control of the city over the streets for the purpose of providing public lights at the expense of the city. Public lighting is provided for by an act passed May 22d, 1894, entitled "An act authorizing the lighting of public streets and places in the cities, towns, townships, boroughs and villages of the state and to erect and maintain the proper appliances." *Pamph. L.* 1894, *p.* 477.

This act expressly authorizes the city from time to time, by ordinance or resolution, to order and cause any public street or streets to be lighted with gas, electricity or otherwise, and for that purpose to erect and maintain, or cause to be erected and maintained, all necessary and proper posts, poles and fixtures on any or all of the public streets, lanes or alleys, and to make and enter into any contract or contracts with any other party or parties for any term or terms not exceeding five years.

The act of 1894 requires neither the consent of the abutting landowners nor the previous designation of streets to authorize their use for the purpose of public lighting. The city has undoubtedly the right to use the streets for its public purpose without the consent of landowners. 2 *Dill. Mun. Corp.* 671 ; *Roebling* v. *Trenton Passenger Railway Co.*, 29 *Vroom* 666 ; *Shefbaur* v. *Kearney*, 28 *Id.* 588.

So far, therefore, as public lighting is concerned the city had the right to erect the three poles on the lands of the prosecutor, or to cause them to be erected and maintained for the use of the city.

The resolution of November 8th, 1896, was a lawful exercise, under the act of May 22d, 1894, of the authority which the city has over its streets.

Whether, under authority granted by that resolution alone the electric company can use these poles for its general private business is a different question.

Second, is the ordinance passed January 8th, 1895, a valid exercise of the power conferred upon the city by the aforesaid acts of 1884, 1893 and 1896 ?

Before discussing this question it is necessary to determine that the prosecutors have a standing which will enable them to challenge its validity by *certiorari*.

If the ordinance as passed provided only for public lighting, it would, for the reasons before given in respect to the resolution, be unassailable. It does, however, provide both for public and private lighting, and the acts of 1884, 1893 and 1896 must therefore be invoked to support it.

The prosecutors are owners of land abutting on the public streets of the city. They are taxpayers concerned in the expense to be incurred under the ordinance and the contract in lighting the city, and have a right to question the regularity of the proceedings, and, what is of more importance, they as residents and taxpayers have a right to intervene to contest the validity of an ordinance by which valuable franchises are granted by the city to a private company.

It seems therefore clear, under the adjudged cases, that the right of the prosecutors to intervene cannot be denied. *Oliver* v. *Jersey City, &c., post.*

The infirmity imputed by the prosecutors to the ordinance is that it failed to designate the streets in which poles might be placed as required by the aforesaid acts of 1884, 1893 and 1896.

The ordinance provides that "all public roads, public places, highways, streets, avenues and alleys of said city which are laid out upon the official map of said city for assessment of taxes, are hereby designated as the public roads, public places, highways, streets, avenues and alleys within said city of Bayonne, on which said poles may be erected. * * * Said poles shall be located, placed and erected within and adjacent to the curb line where shown by the official maps of the city, and shall be reasonably straight and painted in a manner satisfactory to the committee on water, streets and drainage."

The view taken by the Supreme Court is that this designation was too general; that it was a mere evasion of the statu-

tory requirement, in effect giving to the company instead of the city the privilege of designating the streets.

I am unable to concur in this view, and think that it does not give due effect to the language of the ordinance when considered in connection with the contract entered into at the same time, and to promote which the ordinance was manifestly passed.

By the terms of the contract the company was required to furnish light not only to the street lamps erected at the time the ordinance was passed and to those that might thereafter be erected, but also to put up new poles and lamps at the demand of the city in any streets to which gas mains might be extended, with the further engagement to extend the gas mains along all the streets of the city when directed to do so by the city council.

The ordinance was no broader in its designation than the undertaking imposed by the contract on the company. Under the ordinance and contract the company took upon itself the obligation to furnish public lights at the call of the city in every public street and every public place in the city, and in order to enable the company to comply promptly with the demand which might at any time be made by the city, it was necessary that the company should have the right to go into all the streets without waiting for ordinances to be passed from time to time designating streets in which new light service was required.

With a just regard to the interest of the city and to that of the company, the designation of streets contained in the ordinance was a reasonable compliance with the statute.

A designation of all the streets in the city is equivalent to the designation of each and every street by name, and gives no support to the inference that it was intended to be evasive. The legality of a designation in the latter mode has not been questioned.

It will be observed that the legislative acts do not make it obligatory upon the company to place poles in the designated

streets as soon as the designation is made, and therefore the effect is the same whether the designation is generally of all the streets or of each and every street by name.

The purpose of the designation appears to be to prevent the company from occupying any street until the consent of the city is acquired. It could have had no other object.

The permission of the city is a prerequisite to the right of the company to enter the street, and the designation is for the purpose of establishing what streets the company may use and not what they must use in the immediate future. The object of the statute in this case is effectuated by the general designation.

My conclusion therefore is that there is no fatal infirmity either in the resolution or in the ordinance, and that the judgment of the Supreme Court should be reversed as to both resolution and ordinance.

*For affirmance*—None.

*For reversal*—The Chief Justice, Depue, Van Syckel, Garrison, Lippincott, Gummere, Bogert, Nixon, Hendrickson, Adams, Vredenburgh.   11.